# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## Danville Division

EAST AND WESTBROOK
CONSTRUCTION COMPANY, INC.,

      Plaintiff,

v.                                                            Case No.: 4:24-cv-00012

SOUTHSIDE CONCRETE SUPPLY, LLC,
5844 U.S. Hwy 29
Blairs, Virginia  24527,

      Defendant.

## COMPLAINT

Plaintiff, East and Westbrook Construction Company, Inc. ("East and Westbrook") for its Complaint against Defendant, Southside Concrete Supply, LLC ("Southside") states as follows.

## INTRODUCTION

1. Southside promised to supply concrete to East and Westbrook that had a 28 day compressive strength of at least 4500 pounds per square inch ("PSI"). It knew and had reason to know that this type of concrete was required for East and Westbrook to comply with its subcontract to construct the foundation of a power plant transformer. Unfortunately, the concrete Southside supplied turned out to have a compressive strength below what it promised. This compromised the structural integrity of the foundation, and required East and Westbrook to remove and replace the entire foundation and substandard concrete supplied by Southside. East and Westbrook is entitled to recover from Southside the cost East and Westbrook was forced to incur to complete this tear out and replacement work, and other compensatory and consequential damages flowing from Southside's failure, including lost wages, overhead, and profit, delay damages, and reputational harm.

## PARTIES

2. East and Westbrook is a Kentucky corporation with its principal place of business located in Buckner, Kentucky.

3. Southside is a Virginia limited liability corporation with its principal place of business in Blairs, Virginia.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction under 28 U.S.C. §1332. The amount in controversy exceeds $75,000 and Plaintiff and Defendant are citizens of different states.

5. Venue is proper in this District because the majority of wrongful acts engaged in by Defendant occurred in this District.

## FACTUAL ALLEGATIONS

6. Southside is a concrete specialist that designs, supplies, and provides concrete and related goods for use in residential, commercial, industrial, and other construction and development projects.

7. East and Westbrook is a construction company and provides a wide variety of construction services to commercial and industrial customers.

8. East and Westbrook was hired to construct the foundation for a transformer of an electrical substation located in Chatham, Virginia ("the Project").

9. Under the terms of East and Westbrook's subcontract with the general contractor on the Project, the foundation work specified a concrete mix with a minimum twenty-eight (28) day compressive strength of at least 4500 pounds per square inch ("PSI").

10. East and Westbrook engaged Southside to supply the concrete for the foundation work. Southside provided a quote with a specific "concrete mix design" guaranteeing a 28 day

compressive strength exceeding 4500 PSI. In doing so, Southside knew or should have known that the Project specifications required the concrete mix to exceed this compressive strength, and that Southside's failure to do so could damage the structural integrity of the transformer foundation and cause East and Westbrook to depart from its contractual obligations related to the construction of the transformer foundation.

11. East and Westbrook accepted Southside's quote and concrete mix design.

12. Southside then supplied the concrete to East and Westbrook, and East and Westbrook used the concrete supplied by Southside to pour the transformer foundation.

13. Upon testing of the 28 day compressive strength of the concrete supplied by Southside, it was revealed that the concrete failed to exceed the required 4500 PSI.

14. The failure of Southside's concrete to exceed a 28 day compressive strength of 4500 PSI damaged the structural integrity of the transformer foundation. East and Westbrook, under its subcontract with the general contractor on the Project, was obligated to pay for the cost of furnishing all materials and performing all work required to repair or replace the substandard concrete supplied by Southside, including tearing out the concrete, repairing the subgrade, reinforcing the foundation, and re-pouring the concrete foundation.

15. East and Westbrook notified Southside that the concrete it supplied failed to meet the agreed-upon specifications, that Southside's concrete damaged the structural integrity of the foundation, that East and Westbrook was required to pay for the cost of tearing out and replacing the substandard concrete Southside supplied, and that East and Westbrook would be seeking reimbursement of its costs from Southside.

16. Southside agreed to reimburse East and Westbrook for these costs and also promised to assist in the tear out process, including offering to provide its own dump trucks to haul away the damaged concrete in order to minimize the costs of tear out and replacement.

17. However, when the time came, Southside did not supply the trucks or reimburse the costs to repair and replace the foundation, and ceased all communication with East and Westbrook.

18. East and Westbrook incurred costs for the removal and replacement of the damaged concrete slab totaling approximately $253,725.75.

19. East and Westbrook sent an invoice to Southside for the cost of the tear out and replacement work.

20. Southside has refused to pay this amount due and owing to East and Westbrook.

21. East and Westbrook has also suffered additional damages related to Southside's breaches of its professional, contractual, and common law duties, including lost wages, overhead, and profit, delay damages, and reputational harm.

22. East and Westbrook fully performed its obligations and duties pursuant to its agreement with Southside.

23. East and Westbrook has also fully performed its obligation and duties related to its construction of the foundation in dispute.

24. Southside has named East and Westbrook as an additional insured on its insurance policy related to this dispute.

### COUNT I – Breach of Implied Warranty of Merchantability

25. East and Westbrook incorporates the preceding paragraphs and allegations by reference as if set forth fully herein.

26. Under Va. Code Ann. § 8.2-314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

27. For a good to be merchantable, it "must be at least such as":

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

Va. Code Ann. § 8.2-314(2),

28. Southside is a concrete merchant that sold East and Westbrook concrete that it described, labelled, affirmed and promised to exceed a 28 day compressive strength of at least 4500 PSI.

29. Southside owed East and Westbrook an implied warranty of merchantability regarding the structural integrity and compressive strength of the concrete.

30. Southside breached its implied duty when the concrete it supplied East and Westbrook failed to exceed a 28 day compressive strength of at least 4500 PSI.

31. East and Westbrook is entitled to all direct or compensatory and consequential damages flowing from Southside's breach of warranty, including the cost to tear out and replace the concrete, lost wages, overhead, and profits, delay damages, and reputational harm.

## COUNT II – Breach of Implied Warranty of Fitness for a Particular Purpose

32. East and Westbrook incorporates the preceding paragraphs and allegations by reference as if set forth fully herein.

33. "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." Va. Code Ann. § 8.2-315.

34. Southside knew and/or should have known that East and Westbrook required a concrete that exceeds a 28 day compressive strength of 4500 PSI.

35. East and Westbrook relied on Southside's skill and judgment to "design," create, and supply concrete that exceeds a 28 day compressive strength of 4500 PSI.

36. Southside breached its implied duty when the concrete it supplied East and Westbrook failed to exceed a 28 day compressive strength of at least 4500 PSI.

37. East and Westbrook is entitled to all direct or compensatory and consequential damages flowing from Southside's breach of warranty, including the cost to tear out and replace the concrete, lost wages, overhead, and profits, delay damages, and reputational harm.

## COUNT III – Breach of Contract

38. East and Westbrook incorporates the preceding paragraphs and allegations by reference as if set forth fully herein.

39. Southside promised to supply East and Westbrook with concrete that exceeded a 28 day compressive strength of at least 4500 PSI.

40. The compressive strength of the concrete was a material term of the parties' contract.

6

41. Prior to designing, offering, and contracting with East and Westbrook, Southside was aware that this compressive strength was required by East and Westbrook's subcontract and was necessary to ensure the structural integrity of East and Westbrook's foundation work.

42. Southside breached its contractual duty when the concrete it supplied East and Westbrook failed to exceed a 28 day compressive strength of at least 4500 PSI.

43. Southside's substandard concrete caused damage to the structural integrity of the transformer foundation and caused East and Westbrook to breach its subcontract.

44. As a result of its breach of the contract, East and Westbrook suffered damages, including $253,725.75 in costs to tear out and replace the concrete, lost wages, overhead, and profit, delay damages, and reputational harm.

## COUNT IV – Equitable Indemnity

45. East and Westbrook incorporates the preceding paragraphs and allegations by reference as if set forth fully herein.

46. To the extent it is found that a contract did not exist between Southside and East and Westbrook, East and Westbrook alternatively pleads a claim of unjust enrichment.

47. Southside had a duty to supply East and Westbrook with concrete that exceeded a 28 day compressive strength of at least 4500 PSI—specifications Southside agreed to meet and that were required by the Project.

48. Southside breached its duty when the concrete it supplied East and Westbrook failed to exceed a 28 day compressive strength of at least 4500 PSI as agreed to by Southside required by the Project specifications.

49. Southside's substandard concrete caused damage to the structural integrity of the transformer foundation at the substation.

50. Pursuant to its contractual obligations related to the foundation work, East and Westbrook was legally liable for the damage to the property.

51. More specifically, the Project specifications required East and Westbrook to pay for the cost of tearing out and replacing the substandard concrete supplied by Southside in order to repair the damage to the structural integrity of the transformer foundation.

52. To discharge its liability and fulfill its contractual obligations to other entities involved in the substation Project, East and Westbrook incurred $253,725.75 in costs in order to repair the damage that Southside's negligence caused to the property along with other damages.

53. East and Westbrook had no personal fault in the damage to the property caused by the substandard concrete supplied by Southside.

54. Southside has failed to pay the amount due and owing.

55. Based on the foregoing, East and Westbrook is entitled to recover from Southside the amounts paid to $253,725.75 to discharge the liability to the other entities under the Virginia common law of equitable indemnity.

## COUNT V – Unjust Enrichment

56. East and Westbrook incorporates the preceding paragraphs and allegations by reference as if set forth fully herein.

57. To the extent it is found that a contract did not exist between Southside and East and Westbrook, East and Westbrook alternatively pleads a claim of unjust enrichment.

58. East and Westbrook conveyed on Southside a measurable benefit by paying it the agreed amount to provide concrete that met the specifications and requirements mentioned above.

59. Southside accepted the benefit of the agreed amount in exchange for supplying concrete that met the specifications and requirements mentioned above.

60. Southside failed to provide concrete that met the specifications and requirements mentioned above.

61. Southside thus has been unjustly enriched by retaining the monetary benefit East and Westbrook conferred on it without performing the services it promised to provide East and Westbrook.

62. East and Westbrook is therefore entitled to the equitable remedy of recovering from Southside the amount by which it has unjustly enriched itself.

## COUNT VI – Promissory Estoppel

63. East and Westbrook incorporates the preceding paragraphs and allegations by reference as if set forth fully herein.

64. Southside promised to reimburse East and Westbrook the cost to tear out and replace the concrete that Southside supplied and assist in tearing out the concrete.

65. East and Westbrook relied on these promises by engaging in the tear out and replacement work.

66. Southside breached its promises by failing to reimburse East and Westbrook for the tear out and replacement work and failing to assist in the tear out work.

67. East and Westbrook has been damaged by Southside's breaches of its promises, and is entitled to recover all damages flowing from these breaches, including the cost to tear out and replace Southside's concrete, lost wages, overhead, and profits, and reputation harm.

## CLAIM FOR RELIEF

**WHEREFORE**, East and Westbrook respectfully requests the following relief:

    a.    A judgment against Southside to compensate East and Westbrook for all the damages it has suffered and will suffer as a result of Southside's breaches of its contractual, professional, implied, and common law duties;

    b.    All recoverable costs incurred as a result of bringing this action;

    c.    Prejudgment interest until the entry of judgment herein and post-judgment interest thereafter at the statutory rate;

    d.    Attorneys' fees, if applicable;

    e.    A jury trial for all issues triable to a jury;

    f.    Leave to file an Amended Complaint as new information becomes available through discovery and East and Westbrook's ongoing investigation;

    g.    Any and all other relief that this Court deems fair and equitable.

Respectfully submitted,

EAST AND WESTBROOK
CONSTRUCTION COMPANY, INC.,

By counsel:

*/s/Brittany Given Simmons*
Brittany Given Simmons (VSB # 94196)
DINSMORE & SHOHL LLP
801 Pennsylvania Avenue, Suite 610
Washington, D.C. 20004
(202) 372-9116
(202) 372-9141 (Facsimile)
Brittany.Simmons@dinsmore.com